# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00398-COA

**JESSIE CARPENTER A/K/A JESSIE ORLANDO CARPENTER**    APPELLANT

v.

**STATE OF MISSISSIPPI**    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/2022 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/08/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     After shooting a man twice, a man was found guilty of attempted murder and possession of a firearm by a felon. He raises one issue regarding jury instructions on appeal. Finding no error, we affirm.

## BACKGROUND

¶2.     Jessie Carpenter and Antonio Hart got into a physical altercation in the summer of 2019. Months later, on December 15, Carpenter was with two other people sitting in a parked car in Starkville. At some point Hart arrived. Carpenter stayed in the backseat at first but eventually got out of the car.

¶3. Carpenter and Hart then exchanged words. Hart allegedly yelled, "[W]hat the f—k you staring at?" Without responding, Carpenter pulled out a handgun. As Carpenter began to pull the trigger, Hart turned to the side. He was shot in the chest, causing him to fall to the ground. Carpenter then stood over Hart, pointed the gun at him, and shot him once again, in the left arm. Carpenter then attempted to shoot Hart a third time, but his pistol jammed.

¶4. Hart fled and drove himself to the hospital. He was treated for two through-and-through gunshot wounds—one to the chest and one to the left arm.

¶5. The day after the shooting, Hart told the police that Carpenter shot him. Police arrested and then interviewed Carpenter. In the recorded interview, Carpenter admitted he shot Hart and then threw the handgun in a river.

## PROCEDURAL HISTORY

¶6. Carpenter was indicted for attempted murder and being a felon in possession of a firearm. At trial, the recorded interview of the police and Carpenter was admitted into evidence and played for the jury.

¶7. Prior to deliberations, the jury was provided with the State's instruction S-1, which stated in part:

> If you find beyond a reasonable doubt from the evidence in this case that:
>
>> 1. On or about or before December 15, 2019[,] in Oktibbeha County;
>>
>> 2. Jessie Carpenter unlawfully designed and endeavored to commit the crime of murder;
>>
>> 3. By committing the following overt acts:
>>> 1. shooting Antonio Hart in the chest with a handgun, but

2

4. Jessie Carpenter failed therein and/or was prevented from murdering Antonio Hart, then you shall find Jessie Carpenter guilty of count 1 as charged.

If the State did not prove any of the above listed elements beyond a reasonable doubt, then you shall find Jessie Carpenter not guilty of Count I as charged.

¶8. Defense counsel first objected, but not as to the law—only because the defense sought a substitute elements instruction. However, this objection was later withdrawn.

¶9. Next, the State offered instruction S-2, which defined attempt, design, and deliberate design:

The Court instructs the Jury that "whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design constitute an 'attempt.'"

The Court further instructs the Jury that "design" means to calculate, plan or contemplate and "endeavor" describes any effort to accomplish the purposes the statute was enacted to prevent.

The court further instructs that "Deliberate design" to kill a person may be formed very quickly, and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the very moment of the fatal act.[1]

The defense did not object to S-2.

¶10. The jury convicted Carpenter of Count I, attempted murder, and Count II, being a felon in possession of a firearm. He was sentenced as a non-violent habitual offender to serve twenty years for Count I, followed by ten consecutive years for Count II. Following the denial of his post-trial motions, Carpenter appealed.

**STANDARD OF REVIEW**

---

[1] It appears that State's instructions S-1 and S-2 are a combination of the Mississippi Practice Model Jury Instruction (Criminal) § 6:5 (2d ed. updated Oct. 2022) and the Mississippi Plain Language Model Jury Instruction (Criminal) § 2503 (2012) for attempt.

¶11. The Mississippi Supreme Court has held that an opposing party must state a contemporaneous objection in specific terms to a jury instruction to preserve that point for appeal. *Scott v. State*, 231 So. 3d 1024, 1030 (¶32) (Miss. Ct. App. 2016). The "failure to object procedurally bars [an] issue on appeal unless [the] trial court committed plain error." *Id*. at (¶33).

¶12. "In the plain-error analysis, [o]nly an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Id*. "Plain error occurs where the substantiative rights of a defendant are violated." *Id*. "When considering whether a jury instruction created a manifest injustice, instructions are to be read together and taken as a whole with no one instruction taken out of context." *Id*. at (¶ 34).

¶13. "Viewing the jury instruction as a whole, this court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Id*. "Further, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id*.

**DISCUSSION**

¶14. On appeal, Jessie's appointed counsel raises only one issue—that it was plain error for the trial court not to instruct the jury on the elements of murder in an attempted murder case.

¶15. We start with the basic rule: a jury must be properly instructed on the elements of a crime. For "it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Harrell*

4

*v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014). "The supreme court has held that a person is guilty of an attempt within the meaning of Mississippi Code Annotated section 97-1-7 (Rev. 2014) if he shall design and endeavor to commit an offense . . . and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same." *Scott*, 231 So. 3d. at 1035 (¶37) (cleaned up).[2] "Likewise, a proper jury instruction on attempt requires the 'three elements stated in the statute of (1) a design or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act.'" *Id*. at (¶38) (quoting *Henderson v. State*, 660 So. 2d 220, 223 (¶2) (Miss. 1995)).

¶16. In the present case, Carpenter argues the given elements instruction omitted the definition of murder, leaving the jury to speculate as to its definition. While conceding there was no contemporaneous objection to the instruction on this point, he claims it was plain error to fail to define murder.

¶17. The State's first response is that, to the extent Carpenter submitted a separate elements instruction also lacking a definition of murder, he has invited the error. This misses the mark, as the greater point of the defendant's argument is that the State failed to prove an

---

[2] At the time Carpenter was indicted, our precedent generally required the description of an overt act in an indictment charging an attempted crime. However, in 2013 the Legislature expanded the language of the attempt statute, specifically removing the requirement of alleging and proving an overt act solely as to the crime of murder. *See generally Beale v. State*, 361 So. 3d 673, 678 (¶13) (Miss. Ct. App. 2022), *aff'd*, No. 2020-CT-00614-SCT, 2023 WL 3517610, at *3 (¶6) (Miss. May 18, 2023). The Supreme Court approved this Court's reasoning that, per the statute, indictments for attempted murder do not require the description of an overt act. *Id*. While not required, Carpenter's indictment specifically alleged that he violated the statute "by committing the following overt act: shooting Antonio Hart with a handgun," which was "ineffectual[.]"

5

element of the crime, and "[f]ailure to submit to the jury the essential elements of the crime is fundamental error," and the prosecution must also prove each of these elements. *Lyles v. State*, 12 So. 3d 532, 541-42 (¶28) (Miss. Ct. App. 2009); *see Ehrhardt v. State*, No. 2021-KA-01143-COA, 2023 WL 3191573, at *7 (¶23) (Miss. Ct. App. May 2, 2023) (stating "[t]he burden of proving the Defendant guilty beyond a reasonable doubt is always with the State" since "[t]he Defendant never has to prove his innocence").

¶18. Nonetheless, we point out that we have rejected this exact same argument in an attempted rape case. In *Scott*, the defendant was accused of entering a woman's home, grabbing her, and dragging her toward her bedroom. *Scott*, 231 So. 3d at 1030 (¶2). She believed the defendant intended to rape her. *Id.* The victim got loose and "attempted to escape through a window," but the defendant "dragged [her] back to the kitchen, looked through her purse, and found five dollars." *Id.* At that point, he forced her into a car and drove her to get more money; she then escaped. *Id.* He was later convicted of attempted rape, kidnapping, and burglary of a dwelling. *Id.* at (¶5).

¶19. Like in this case, one of Scott's issues was that the trial court committed plain error by only instructing the jury on the elements of attempted rape and the definition of attempt. *Id.* at (¶7). He contended the jury also should have been instructed on the definition of rape. *Id.*

¶20. After a review of three prior cases, we ultimately found none of them "required that the elements of attempted rape include the definition of rape[.]" *Id.* at 1035-36 (¶40). We held "a proper jury instruction requires the three elements stated in the statute of (1) a design

6

or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act." *Id.* at (¶38). Because the given jury instructions included the intent to commit the offense of rape, contained the overt acts taken toward the commission of the crime, and provided the defendant was prevented from consummating the crime of rape, "the instruction properly recited the law on attempted rape." *Id.* at (¶40). We also noted that the trial court gave a jury instruction defining attempt. *Id.* As a result, this Court found no plain error. *Id.*

¶21. Just as the defendant argued in *Scott*, here Carpenter argues it was plain error to fail to instruct the jury on the elements of murder. Yet he does not identify any specific precedent regarding such a definition, relying only on the general rule that a jury must be instructed on the elements of a crime; he also does not explain why we should not apply the same reasoning from *Scott*.

¶22. As in *Scott*, and as set out above, the elements of the attempted crime were properly explained in S-1. Furthermore, S-2 further defined the elements of attempted murder—attempt, design, endeavor, and deliberate design. Based on our precedent, the two instructions properly instructed the jury. Carpenter admits he failed to object to these instructions, so this "failure to object procedurally bars issue on appeal unless [the] trial court committed plain error." *Id.* at 1034 (¶33). Since the jury was provided with instructions that adequately defined the crime of attempted murder, plain error does not develop.

¶23. Furthermore, there is a common sense reason why a jury instruction for an attempted crime does not require a companion definition for the attempted felony. A defendant is guilty

7

of attempt if he or she "shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same . . . ." Miss. Code Ann. § 97-1-7 (2) (Rev. 2014). Once these elements have been met, the crime of attempt has been completed. Providing the jury with the elements of both attempt and the attempted felony could lead to confusion about what crime the defendant was charged with and what elements were required to be proved. *Irby v. Travis*, 935 So. 2d 884, 897 (¶30) (Miss. 2006) (reversing when a jury instruction "was impermissibly vague and confusing").

¶24.    Last, Carpenter failed to show he suffered prejudice from the jury instructions. "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming." *Hall v. State*, 201 So. 3d 424, 428 (¶12) (Miss. 2016). Here, Carpenter admitted shooting Hart with a handgun, which alone could have killed him. However, the victim survived, so the crime charged and instructed was "attempted murder." As set out in *Scott*, "a proper jury instruction on attempt requires" that the jury instruction includes language regarding " (1) a design or endeavor to commit an offense, (2) an overt act toward commission . . . , and (3) a failure to consummate the act." *Id*. at 1035 (¶38). The jury instruction follows our precedent, so there is no error.

## CONCLUSION

¶25.    Finding that the jury instruction adequately defined attempted murder, we find the trial court committed no error.

¶26.    **AFFIRMED.**

8

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**